The prisoner hath been tried on an indictment containing several counts, founded on an act of Assembly passed in 1825. The jury have rendered their verdict in the case as follows, "guilty of the (343) felony of concealing, conveying and carrying as charged in the bill of indictment," without finding the fact that it was with the intent and for the purpose of enabling the slave to effect her escape out of the State.
A motion for a new trial was made, because the slave whom the prisoner is charged with carrying and secreting on board of the vessel, to which he was attached as steward, was the property of a free man of color; that the owner is not a citizen of the State, within the meaning of the statute; because he has not the full and complete political privileges and immunities with which the constitution and laws have clothed a white man.
By the laws of this State, a free man of color may own and hold lands and personal property, including slaves. Without therefore stopping to inquire into the extent of the political rights and privileges of a free man of color, I am very well satisfied from the words of the act of the General Assembly, that the Legislature meant to protect the slave property of every person, who by the laws of the State are entitled to hold such property. I am, therefore, of the opinion that the owner is a citizen within the meaning of the act of Assembly; and it appearing that he was a mulatto, is not a reason to grant a new trial.
The counsel for the prisoner in the second place, moved in arrest of judgment, because it appeared by the record, that the prisoner was a slave. It is contended that he is but a chattel, a thing, and not to be considered a "person," within the meaning of the act of Assembly. The Legislature, by Laws 1795, c. 5, made it felony without the benefit of clergy, in the master of a vessel who committed or procured to be committed, an offense of the description with which the prisoner is charged. That act extended only to the master or commander of the vessel. The Legislature discovered, that the reasons for inflicting the penalty on the commander equally applied to the crew or persons on board the vessel; and an act was *Page 281 
passed in 1825, to reach all the persons that should be attached to the vessel. The first section of that act, is in the following words, "if any master of any ship or vessel, mariner or any other person or persons, trading or being within (344) this State, shall carry, convey or conceal on board of any ship or vessel, any negro or mulatto slave or slaves, the property of any citizen or citizens of this State, etc., with the intent and for the purpose of enabling such slave or slaves to effect his or their escape out of this State, they shall suffer death without the benefit of clergy." The prisoner, although a slave, is a "person" in the natural acceptation of that term; a slave is a person capable of committing crimes, and subject to punishment. I think the prisoner is a person within the words and meaning of the act of Assembly. The motion in arrest on this point, is not good in law. But, the verdict rendered by the jury is special, and can the Court pronounce sentence against the prisoner, on the verdict as it now stands? It is contended for the State that the proper reading of this special verdict is, that the "jury find the prisoner guilty of feloniously concealing, conveying and carrying as charged in the bill of indictment." That the finding by the jury, that the carrying, concealing and conveying was felonious, as charged in the bill of indictment, is a finding, that the prisoner did the acts, with the intent set forth in the indictment. That the intent as charged, is comprehended in the words, "guilty of the felony," set out in the verdict. What will constitute a felony, is a question of law, upon facts found by the jury. That the jury necessarily intended by the word "felony" made use of by them in the verdict, to include the fact of a felonious intent in the prisoner, to carry the slave on board the vessel, so that she might effect her escape out of the State, does not directly and plainly appear to the Court. That the jury has given the same meaning to the word "felony" as made use of by them, that the Court would give, is left to conjecture. The Court cannot infer anything, that is material to constitute the offense, which is not directly found; every fact material to the issue must appear in the special verdict. We are not to conjecture that the jury meant to find the prisoner guilty of carrying the slave on board of the vessel, with a felonious intent, to enable her to effect her escape out of the State. Boyles v. Commonwealth, (345) 2 Serg. Rawle, 40, was an indictment for endeavoring to conceal the death of an infant bastard child, so that it might not come to light whether the said infant was born dead or alive, contrary to the statute. The jury found the prisoner "guilty of the concealment, in *Page 282 
manner and form as she stands indicted." The Court thought, that the concealment might be in manner and form, yet the fact had not been found (a material one), that the child was a bastard; and unless it was a bastard there was no offense. The judgment which had been given against the prisoner was reversed. The jury did not find, that the prisoner was guilty of the felony of concealment; nor would that word have cured the defect. In this case, the verdict of "guilty of the felony of concealment, conveying and carrying, as charged in the bill of indictment," is insufficient without finding the fact, that he carried or concealed the slave on board the vessel, with the intent and for the purpose of enabling said slave to effect her escape out of this State. The judgment, rendered against the prisoner, must be reversed, and a venire de novo awarded.
PER CURIAM. Judgment reversed.
Cited: S. v. Woodly, 47 N.C. 284; S. v. Horan, 61 N.C. 576; S. v.Whitaker, 89 N.C. 474; S. v. Morgan, 136 N.C. 632.